97 F.3d 1261
 65 USLW 2264, 51 Soc.Sec.Rep.Ser. 804,
Medicare & Medicaid Guide P 44,709,
96 Cal. Daily Op. Serv. 7499,
96 Daily Journal D.A.R. 12,347
 LEGACY EMANUEL HOSPITAL AND HEALTH CENTER; Legacy Emanuel
Hospital and Health Center d/b/a Holladay Park Medical
Center; Oregon Health Sciences University Hospital and
Clinics; Portland Adventist Medical Center; Rogue Valley
Medical Center; Sisters of St. Joseph of Peace Health and
Hospital Services d/b/a Sacred Heart General Hospital; and
Salem Hospital, Plaintiffs-Appellees,
v.
Donna E. SHALALA, Secretary, Department of Health and Human
Services, Defendant-Appellant.
 No. 95-35622.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 17, 1996.
Decided Oct. 9, 1996.
 
 Scott R. McIntosh, Department of Justice, Washington, D.C., for appellant.
 Sanford E. Pitler, Bennett & Bigelow, Seattle, Washington and Charles S. Gauger, Portland, Oregon, for appellees.
 Appeal from the United States District Court for the District of Oregon, Ancer L. Haggerty, District Judge, Presiding. D.C. No. CV-94-754-ALH.
 Before: PREGERSON, BOOCHEVER, and T.G. NELSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The Secretary of Health and Human Services ("Secretary"), appeals the district court's summary judgment in favor of plaintiff hospitals. The district court overturned the Secretary's interpretation of a Medicare reimbursement provision, deciding that Congress intended to count all days spent in hospitals by low-income patients, whether or not paid by Medicaid, in reimbursing increased costs to hospitals serving a disproportionately high number of low-income patients. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 2
 * Medicare is a health insurance program that pays for covered medical care primarily to aged and disabled persons. 42 U.S.C. §§ 1395 et seq. Medicaid is a cooperative federal-state program that provides health care to indigent persons who are aged, blind, or disabled, or members of families with dependent children. 42 U.S.C. §§ 1396 et seq. The program is jointly financed by the federal and state governments, and administered by the states according to the federal guidelines. Id.; 42 C.F.R. § 430.0. States are required to cover specific medical services, and at their option may cover additional services. 42 U.S.C. § 1396d(a). Medicaid also specifies categories of persons that must be covered and allows the states the option of covering additional specified categories. 42 U.S.C. § 1396a(a)(10). Each state participating in the Medicaid program must submit a state plan that meets the broad requirements imposed by the statutes and regulations. 42 U.S.C. § 1396a. Within those broad requirements, however, states are given discretion to determine the type and range of services covered, the rules for eligibility, and the payment levels for services. 42 C.F.R. § 430.0. For example, eighteen states place a limit on the number of days of a hospital stay for which Medicaid will pay. As a result, Medicaid programs vary from state to state, both with respect to persons covered, and scope and duration of covered services.
 
 
 3
 Prior to 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b). Since 1983, reimbursement for hospitals' operating costs under the Medicare system has been by the Prospective Payment System (PPS), 42 U.S.C. § 1395ww(d). An individual hospital's reimbursement is based on a predetermined amount that an efficiently run hospital should incur for inpatient services depending on the patient's diagnosis at time of discharge. Hospitals are paid a fixed amount for each patient based on one of approximately 490 diagnosis-related groups (DRG), subject to certain payment adjustments. 42 U.S.C. § 1395ww(d)(1)-(d)(4); 42 C.F.R. Part 412.
 
 
 4
 In 1983, Congress determined that hospitals that served a disproportionately large number of low-income patients incurred greater costs that were not met by the standard PPS calculation. Accordingly, Congress authorized the Secretary of the Department of Health and Human Services (HHS) to provide an adjustment, called the "disproportionate share adjustment" (DSH) to hospitals that served a disproportionate share of low-income persons. See 131 Cong. Rec. S10931. As of 1985, the Secretary still had not made the adjustment. Id.
 
 
 5
 In 1986, Congress enacted the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub.L. No. 99-272 (1986). In COBRA, Congress included a provision creating and defining the "disproportionate share" (DSH) adjustment. Id. at § 9105. Congress directed the Secretary to provide a DSH adjustment to PPS payments for hospitals serving a disproportionately large number of low-income patients, and this time Congress included a specific adjustment method. The application of the DSH provision enacted by Congress in COBRA is the subject of this suit.
 
 
 6
 A hospital qualifies for a DSH adjustment if its "disproportionate patient percentage" (DPP) meets or exceeds levels specified in 42 U.S.C. § 1395ww(d)(5)(F)(v). The hospital's disproportionate patient percentage is "defined as the sum of two fractions expressed as percentages and serves as a 'proxy' for all low income patients." Jewish Hospital, Inc. v. Secretary of Health and Human Servs., 19 F.3d 270, 272 (6th Cir.1994). The first fraction, i.e., the Medicare Low Income Proxy, accounts for low-income Medicare patients and is based on the number of Medicare patients who qualify for Supplemental Security Income. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).[1] The second fraction, i.e., the Medicaid Low Income Proxy, accounts for non-Medicare low-income patients. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).[2] It is the interpretation of the second fraction--the Medicaid Low-Income Proxy--which is in dispute.
 
 
 7
 In 1986, the Secretary promulgated a regulation to implement the Medicaid Low-Income Proxy. The regulation recognizes Medicaid patient days as only those days for which the state plan provides for payment. Medicare Program, 51 Fed.Reg. 16,777 (1986).[3] In states such as Oregon, which limit the number of days that the state plan provides payment for inpatient care, not all days of care actually provided to Medicaid eligible patients would count toward the hospital's DSH. This results in reduced DSH reimbursement for such hospitals serving low-income patients. Plaintiff hospitals argue that the Secretary's interpretation of the Medicaid Low-Income Proxy is incompatible with Congress's statutory language. They argue that because the proxy is a method of accounting for low-income patients, it should include all days spent by Medicaid patients in hospitals, whether or not those days were actually paid for by Medicaid.
 
 II
 
 8
 The district court found that the Secretary's interpretation of the Medicaid proxy was unlawful. In reaching this decision, the district court relied on the reasoning of the Sixth Circuit in Jewish Hospital, 19 F.3d 270. The Eighth Circuit has also applied Jewish Hospital 's reasoning to a similar case. Deaconess Health Servs. Corp. v. Shalala, 83 F.3d 1041 (8th Cir.1996).
 
 
 9
 * The Sixth Circuit held that according to the plain language of the statute, "the word 'eligible' refers to whether a patient is capable of receiving ... Medicaid." Jewish Hospital, 19 F.3d at 274. "Eligible" does not require that the patient actually have been paid for all days by Medicaid. Additionally, by using the different terms "entitled" and "eligible" in adjacent provisions, Congress intended different meanings for the terms. Id. at 275. "Entitled" in the Medicare proxy "means that one possesses the right or title to that benefit." Id. "Eligible," on the other hand, means "eligibility for and not actual payment of benefits." Id. Finally, Congress's "overarching" intent was for the proxy to define the proportion of low-income patients served by a hospital. Limiting "eligibility" to days paid by Medicaid unnecessarily restricts the subsidy, excluding patient days attributable to patients who meet the Medicaid low-income requirements. Id.
 
 
 10
 The Sixth Circuit then held that even if the intent of the statute was ambiguous, the Secretary's interpretation was nevertheless impermissible in light of the legislative history of the Medicaid proxy. The Sixth Circuit concluded from the legislative history that Congress intended the Medicaid proxy to include all days attributable to a Medicaid beneficiary, whether or not paid by Medicaid, and that this is "undoubtedly the best approximation of the presence of low-income patients." Jewish Hospital, 19 F.3d at 276.
 
 B
 
 11
 The district court based its decision on the Sixth Circuit's opinion in Jewish Hospital, 19 F.3d 270, noting that the government had conceded that the facts in the present case were indistinguishable from those in Jewish Hospital. The district court then determined that the issue before it was identical to the question of law before the Sixth Circuit--the Secretary's regulatory interpretation of the Medicaid proxy.
 
 
 12
 The government argued in the district court that Jewish Hospital was inapplicable because in that case the government had conceded that the term "for such days" was ambiguous, but argued that the Secretary's interpretation was permissible. By contrast, the government argued in the present case that the term "for such days" is unambiguous and that the plain language of the statute supports the Secretary's interpretation. Nevertheless, the district court found that the government's change in position did not change the applicability of Jewish Hospital to the identical question of law. Finding Jewish Hospital applicable, the district court granted partial summary judgment[4] for the plaintiff hospitals because the government had conceded at a hearing that the court's adoption of the reasoning in Jewish Hospital would render its remaining arguments moot.
 
 III
 
 13
 The proper standard of review for cases involving statutory interpretation is set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In reviewing an agency's construction of a statute which it administers, the first question for this court is "whether Congress has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842, 104 S.Ct. at 2781. If Congress's intent is clear, that is the end of the matter; the court and agency must give effect to that intent. Id.
 
 
 14
 If, however, the intent of Congress is silent or ambiguous, then the court may not simply impose its own construction on the statute. Id. at 843, 104 S.Ct. at 2782. The court instead must determine whether the interpretation of the statute adopted by the agency is based on a permissible construction of the statute. Id. This court "must reject administrative constructions of [a] statute ... that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." Securities Indus. Ass'n v. Board of Governors of the Fed. Reserve Sys., 468 U.S. 137, 143, 104 S.Ct. 2979, 2982, 82 L.Ed.2d 107 (1984).
 
 IV
 
 15
 We believe the language of the Medicare reimbursement provision is clear: the Medicaid proxy includes all patient days for which a person was eligible for Medicaid benefits, whether or not Medicaid actually paid for those days of service. We base our conclusion on Congress's use of the word "eligible" rather than "entitled," as well as Congress's use of the Medicaid proxy to define non-Medicare low-income patients for purposes of determining a hospital's share of low-income patients.
 
 
 16
 * The Medicaid proxy uses the language "eligible for medical assistance under ... [Medicaid]," immediately followed by "but ... not entitled to ... [Medicare]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). The Medicare proxy uses the language "entitled to benefits under [Medicare] and ... entitled to supplementary security income...." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). The government argues that Congress's use of different wording in adjacent provisions "simply reflects the more general use of those terms in the Medicaid and Medicare legislation to describe the potential beneficiaries of the programs." Appellant's Opening Brief at 20-21 (quoting Jewish Hospital, 19 F.3d at 278-79 (Batchelder, J., dissenting)). The government's argument is that no significance should attach to Congress's use of different terms in adjacent provisions.
 
 
 17
 By contrast, plaintiff hospitals argue for adoption of the Jewish Hospital reasoning that the use of different terms in adjacent provisions connotes different meanings. Appellee's Brief at 14; Jewish Hospital, 19 F.3d at 275. Indeed, the use of different language by Congress creates a presumption that it intended the terms to have different meanings. See Washington Hosp. Center v. Bowen, 795 F.2d 139, 146 (D.C.Cir.1986). For if Congress had wanted to limit the Medicaid proxy to days for which Medicaid actually paid, Congress could have used "entitled" or expressly specified that it was to include only those days actually paid for by Medicaid. Here, the use of the broader word "eligible" indicates a meaning different from "entitlement," which means "the absolute right to ... payment." Jewish Hospital, 19 F.3d at 275.
 
 B
 
 18
 Congress's "overarching intent" in passing the disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low income" persons. Jewish Hospital, 19 F.3d at 275. The DSH provision directs the Secretary to provide an additional payment to hospitals serving a disproportionate number of low-income patients. 42 U.S.C. § 1395ww(d)(5)(F)(1)(i). As discussed above, Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low-income patients.
 
 
 19
 Both parties agree that the Medicare proxy only counts patient days paid by Medicare. The government, however, also argues that the Medicaid proxy should similarly only count patient days paid by Medicaid. Appellant's Response Brief at 6. This analogy fails because the two clauses serve different purposes.
 
 
 20
 Within the Medicare proxy, the language "entitled to benefits under [Medicare]" does not serve to define Medicare patients that are low-income. Instead, the language only limits the Medicare proxy to Medicare patients. This language does not determine the low-income status of Medicare patients--that status is determined by their entitlement to SSI.
 
 
 21
 Within the Medicaid proxy, in contrast, the language "eligible for medical assistance under [Medicaid]" defines the low-income status of Medicaid patients. The Medicaid proxy covers patients "not entitled to benefits under [Medicare]" (thereby preventing Medicaid-eligible patients from being counted twice). The Medicaid proxy thus uses eligibility for Medicaid as the indicator of low income.
 
 
 22
 In short, the clauses serve different purposes within each proxy. Accordingly, the government's analogy is substantively incorrect.
 
 
 23
 The Medicaid statute mandates that certain categories of people are eligible to receive Medicaid under the state administered plan. 42 U.S.C. § 1396a(a)(10)(A)(i). The statute also permits the states to make additional groups of people eligible for assistance under Medicaid. 42 U.S.C. § 1396a(a)(10)(A)(ii). It is these groups that are considered to be low-income by virtue of their eligibility for Medicaid. Patients meeting the statutory requirements for Medicaid do not cease to be low-income patients on days that the state does not pay Medicaid inpatient hospital benefits. Thus, it is illogical to conclude that Congress intended that only Medicaid-paid days serve as the proxy for low-income patients days.
 
 
 24
 The government also argues that the Medicaid proxy's parenthetical "(for such days)" supports the Secretary's reading. Appellant's Opening Brief at 18. The Medicaid proxy counts towards reimbursement of "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Medicaid]." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). Logically, the parenthetical "(for such days)" refers to "patient days" in the statute. The government would have us conclude that "patient days" is limited to those days actually paid by Medicaid in those states that limit the number of days in a hospital for which Medicaid will pay. However, the parenthetical "(for such days)" does not, as the government argues, "naturally serve" to limit the Medicaid proxy to patient days paid for by Medicaid, even though the patient met the status requirements for Medicaid eligibility during his full stay. See Appellant's Brief at 18. It simply means that a hospital can only attribute "patient days" to low-income patients. A patient who, because of change in status while in the hospital, is no longer eligible for Medicaid cannot be considered a low-income patient for those days that he was not in fact "eligible." This serves to ensure that the Medicaid proxy counts only truly low-income patients.
 
 
 25
 In sum, Congress's intent is made clear in the Medicaid proxy by its use of "eligible" rather than "entitled," and its overarching intent to compensate hospitals for serving low-income people.
 
 V
 
 26
 We hold that the statutory language is clear because of Congress's use of "eligible" rather than "entitled," and because Congress's overarching goal was to reimburse hospitals for the added expense of serving low-income patients. A construction of the Medicaid proxy that includes all days attributable to Medicaid patients, whether paid or not, best serves this goal. Because the language of the statute clearly provides that the Medicaid provision includes all days attributable to Medicaid patients, whether paid or not, there is no need to look further. See Chevron, 467 U.S. at 842, 104 S.Ct. at 2781. Accordingly, we AFFIRM the district court's summary judgment in favor of the hospitals.
 
 
 
 [1]
 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) states:
 (I) the [first] fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under [Medicare] and were entitled to supplementary security income benefits (excluding any State supplementation) under [SSI], and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to [Medicare].
 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).
 
 
 [2]
 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) states:
 (II) the [second] fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Medicaid], but who were not entitled to benefits under [Medicare], and the denominator of which is the total number of the hospital's patient days for such period.
 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).
 
 
 [3]
 The Secretary promulgated the following regulation to implement the Medicaid Low-Income Proxy:
 Section 1886(d)(5)(F)(vi)(II) of the Act describes Medicaid patient days as those "... which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX...." Therefore, Medicaid covered days will include only those days for which benefits are payable under title XIX [Medicaid]. Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.
 Medicare Program, 51 Fed.Reg. 16,777 (1986) (emphasis added). This Medicaid Low-Income Proxy was codified as follows:
 [T]he number of patient days furnished to patients entitled to Medicaid but not to Medicare part A, [divided] by the total number of patient days in that same period.
 
 
 [42]
 C.F.R. § 412.106(b)(4) (emphasis added)
 
 
 [4]
 The plaintiffs alleged in the complaint that: (1) the Secretary unlawfully interpreted 42 U.S.C. § 1395ww(d)(5)(F)(vi); (2) the Secretary's interpretation of that statute violated the equal protection clause of the Fifth Amendment; and (3) the Secretary's promulgation of 42 C.F.R. § 412.106 violated the advance notice and comment procedures of the Administrative Procedure Act. (ER at 27.) On November 22, 1994, the hospitals filed a motion for partial summary judgment based solely on their claim that the Secretary's regulatory interpretation was unlawful. (Id.) It is the district court's grant of this motion for partial summary judgment that is the basis of this appeal