# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 11, 2005           Decided July 1, 2005

No. 04-5203

IN RE: MEDICARE REIMBURSEMENT LITIGATION

BAYSTATE HEALTH SYSTEMS, D/B/A BAYSTATE MEDICAL
CENTER, ET AL.,
APPELLEES

MICHAEL O. LEAVITT, SECRETARY, DEPARTMENT OF HEALTH
& HUMAN SERVICES,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00601)
(No. 03mc00090)

———

*Anne Murphy*, Attorney, U.S. Department of Justice, argued
the cause for appellant. With her on the briefs were *Peter D.
Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S.
Attorney, and *Anthony J. Steinmeyer*, Assistant Director.

*Christopher L. Keough* argued the cause for appellees.
With him on the brief were *John M. Faust* and *Stephanie A.
Webster*.

Before: SENTELLE, ROGERS, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*:  In this case, the district court ordered the Secretary of Health and Human Services to make statutorily mandated payments to hospitals serving high percentages of low-income patients.  Finding no error, we affirm.

**I.**

Pursuant to the Medicare Act, the Secretary of Health and Human Services reimburses hospitals for the "operating costs of inpatient . . . services" provided to Medicare and Medicaid beneficiaries.  *See* 42 U.S.C. § 1395ww.  At the end of each fiscal year, eligible hospitals file cost reports with their "fiscal intermediaries," *see* 42 C.F.R. § 413.20(b); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 809 (D.C. Cir. 2001)—usually insurance companies that serve as the Secretary's agents for purposes of reimbursing health care providers, 42 C.F.R. §§ 421.1, 421.3; *see generally id*. § 421.100-421.128.  After auditing the reports, intermediaries issue "Notice of Program Reimbursements" ("NPRs") in which they determine the amount owed to the hospitals for the fiscal year at issue.  *See id*. § 405.1803(a)(2).  Hospitals unhappy with their fiscal intermediary's award have 180 days to appeal to the Provider Reimbursement Review Board ("the Review Board"), 42 U.S.C. § 1395oo(a), which issues a decision that the Secretary may "reverse[], affirm[], or modif[y]" within 60 days, *id*. § 1395oo(f)(1).  Hospitals remaining dissatisfied after the Review Board or Secretary issues a final decision may seek "judicial review" by filing suit in the appropriate U.S. District Court.  *Id*.

Known at the time of the events at issue here as the Health Care Financing Administration ("HCFA"), the agency within HHS responsible for administering Medicare and Medicaid promulgated regulations that permit reopening of final NPRs.

Two reopening provisions play central roles in this case. One, 42 C.F.R. § 405.1885(a) (1997), provides that an intermediary's payment determination or a decision by the Review Board or Secretary "may be reopened" if its issuer or the affected hospital moves to do so within three years of the date of the determination or decision. The other, 42 C.F.R. § 405.1885(b) (1997), provides (though it has been amended since the events at issue here) that an intermediary's determination "shall be reopened and revised by the intermediary if, within the . . . 3-year period, the Health Care Financing Administration notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions."

The Medicare Act bases payments for "operating costs of inpatient hospital services" on preset nationally applicable rates, but those rates are subject to hospital-specific adjustments, 42 U.S.C. § 1395ww(d), one of which, the "Disproportionate Share Hospital" ("DSH") adjustment, increases payment rates for hospitals serving disproportionately high percentages of low-income patients, *id*. § 1395ww(d)(5)(F). Several years after creating the DSH adjustment, Congress enacted legislation that established detailed criteria for determining eligibility and the extent of a hospital's adjustment. Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, § 9105, 100 Stat. 82, 158-60 (1986) (codified at 42 U.S.C. § 1395ww(d)(5)(F)). HCFA promulgated interpretive regulations to implement these new statutory provisions, *see* 51 Fed. Reg. 16,772, 16,776-78 (May 6, 1986), but between 1994 and 1996 four circuits found the regulations inconsistent with one of these provisions, ruling that HCFA had improperly restricted DSH eligibility and reduced payments to eligible hospitals. *Cabell Huntington Hosp., Inc. v. Shalala,* 101 F.3d 984 (4th Cir. 1996); *Legacy Emanuel Hosp. & Health Ctr. v. Shalala,* 97 F.3d 1261 (9th Cir. 1996); *Deaconess Health Servs. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996) (per curiam); *Jewish Hosp., Inc. v.*

*Sec'y of Health & Human Servs.*, 19 F.3d 270 (6th Cir. 1994).

Responding to these decisions, HCFA issued Ruling 97-2, in which it announced it had "chang[ed] its interpretation of [the statutory provision at issue] to follow the holdings of the United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits." Health Care Financing Administration Ruling 97-2, at 1 (Feb. 27, 1997) ("HCFAR 97-2" or "Ruling 97-2"). Significantly, however, HCFA's new interpretation would have prospective effect only. As the ruling explained, HCFA would "not reopen settled cost reports," and would instead apply its new interpretation only to cost reports settled thereafter, or to cost reports for which the hospital had a "jurisdictionally proper appeal pending on this issue." *Id*. at 2.

After HCFA issued Ruling 97-2, two DSH eligible hospitals, Monmouth Medical Center and Staten Island University Hospital, filed motions with their intermediaries pursuant to section 405.1885, seeking to reopen NPRs issued to them during the three years prior to the ruling. *Monmouth*, 257 F.3d at 808, 810. When the intermediaries denied these motions and the Review Board declined to order the proceedings reopened, the two hospitals sued in the U.S. District Court for the District of Columbia, which dismissed for lack of jurisdiction. *Id*. Reversing, we held in *Monmouth Medical Center v. Thompson*, 257 F.3d 807, that the district court had jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, to order reopening of the hospitals' NPRs. *Id*. at 813-815. We explained that Ruling 97-2 amounted to a finding that HCFA's old method of calculating DSH entitlement was "inconsistent with the applicable law" for the purposes of section 405.1885(b). *Id*. (quoting 42 C.F.R. § 405.1885(b)). Pointing out that the regulation speaks in mandatory terms—intermediaries "shall" reopen payment determinations when they receive notice the determinations are "inconsistent with the applicable law"—we held that Ruling 97-2 gave intermediaries a clear duty to reopen

the NPRs even though the ruling said it had only prospective effect. *Id.*

Eight months later, plaintiffs in this case, twenty-six hospitals serving Medicare and Medicaid beneficiaries, filed suit under the Mandamus Act, seeking to compel reopening of NPRs issued to them in the three years preceding Ruling 97-2. Over 250 other hospitals filed similar suits, which (with some exceptions) the district court stayed pending resolution of the "core issue" in this case, *In re Medicare Reimbursement Litig.*, No. 03-0090 (D.D.C. July 1, 2003) (adopting case management plan staying actions other than this action). The court then denied the Secretary's motion to dismiss and granted plaintiffs' motion for summary judgment, relying on *Monmouth*'s holding that Ruling 97-2 triggered a duty to reopen NPRs pursuant to section 405.1885(b). *In re Medicare Reimbursement Litig.*, No. 03-0090, slip op. at 8, 11 (D.D.C. Mar. 26, 2004).

The Secretary now appeals.

## II.

Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Pursuant to this act, a district court may grant mandamus relief if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quoting *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997)). A district court's determination that a plaintiff has met these standards is reviewed de novo. *See Am. Cetacean Soc'y v. Baldrige*, 768 F.2d 426, 432 (D.C. Cir. 1985) (reviewing de novo district court's conclusion that claim passed three-prong test for mandamus jurisdiction), *rev'd on other grounds sub*

*nom. Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986). Even when the legal requirements for mandamus jurisdiction have been satisfied, however, a court may grant relief only when it finds "compelling . . . equitable grounds." *13th Reg'l Corp. v. U.S. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). As to the equities, we review for abuse of discretion. *See Am. Cetacean Soc'y*, 768 F.2d at 444 (reviewing for abuse of discretion district court's determination that granting mandamus relief comports with equity).

We begin with *Monmouth.* There, we held that two hospitals, similar in all significant respects to the hospitals in this case, had satisfied the requirements for mandamus relief. The Secretary had a clear duty to require the intermediaries to reopen the hospitals' NPRs, we held, because Ruling 97-2 amounted to a notice of inconsistency and because section 405.1885(b) mandates reopening when HCFA issues such a notice. *Monmouth*, 257 F.3d at 813-15. In finding mandamus jurisdiction, we held implicitly that the hospitals had a clear right to relief, and we explained that they had no other adequate means of obtaining relief. *Id*. at 811-13, 815. To prevail in this case, then, the Secretary must identify some reason why the district court should have denied mandamus relief notwithstanding our decision in *Monmouth.* The Secretary suggests five such reasons.

First, the Secretary devotes over half the argument section of his opening brief to a direct attack on *Monmouth*, arguing that contrary to *Monmouth*'s holding, Ruling 97-2 did not really constitute a notice of inconsistency. As "one three-judge panel . . . does not have the authority to overrule another . . . panel of the court," *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996), we have no authority to consider this argument.

Second, the Secretary argues that the hospitals here failed to exhaust all avenues for administrative relief, as they never appealed to the Review Board when their NPRs first issued.

This argument, too, is barred by *Monmouth.* Plaintiffs there likewise failed to bring such appeals, yet we found that the district court had mandamus jurisdiction. *See* 257 F.3d at 815.

Third, the Secretary argues that the hospitals cannot show an absence of alternate avenues for relief because, unlike the *Monmouth* plaintiffs, they never sought reopening pursuant to section 405.1885(a). Yet neither when we decided *Monmouth* nor when HCFA issued Ruling 97-2 did a motion for reopening offer any chance for the hospitals to obtain relief. Section 405.1885(a) provides that "[a]ny . . . request to reopen must be made within 3 years of the date of the notice of the intermediary," and by the time we decided *Monmouth*, the three-year period had long since passed for the NPRs at issue here. Hence, had the hospitals sought reopening following *Monmouth*, their intermediaries would have dismissed their motions as untimely. True, a motion filed in 1997—when HCFA issued Ruling 97-2—would have been timely with respect to these NPRs. Ruling 97-2, however, purported to be prospective only: it barred intermediaries from reopening closed NPRs to recalculate DSH entitlement in accordance with the new interpretation of the statute. *See* HCFAR 97-2 at 2. As counsel for the Secretary conceded at oral argument, intermediaries were not at liberty to ignore this bar even if they believed the ruling amounted to a notice of inconsistency. Tr. of Oral Arg. at 4-5; *see also Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 406 (1988) (noting that "[n]either the fiscal intermediary nor the [Review] Board has the authority to declare regulations invalid"). Moreover, hospitals may not seek judicial review of an intermediary's denial of a motion to reopen a payment determination. *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 456-57 (1999). Consequently, the hospitals could not have obtained relief by seeking reopening in 1997.

The Secretary's fourth argument, like the second and third,

focuses on the hospitals' failure to appeal or move for reopening. Conceding that section 405.1885(b) creates a duty to reopen NPRs of all affected hospitals when HCFA issues a notice of inconsistency, the Secretary argues that only those hospitals which either appealed to the Review Board or sought section 405.1885(a) reopening, as did the *Monmouth* hospitals, have a legally cognizable interest in the reopening of their NPRs. But given that section 405.1885(b) does not require hospitals to file anything at all to obtain relief, we see no basis for holding that only those hospitals that appealed or sought section 405.1885(a) reopening have a personal right to the reopening required by section 405.1885(b). Indeed, the fact that section 405.1885(b) contains no prerequisite for relief beyond a notice of inconsistency suggests that all hospitals undercompensated due to an erroneous interpretation of the law have a personal right to section 405.1885(b) reopening.

Finally, the Secretary contends that the equities require denial of mandamus relief. Reviewing the district court's balancing of the equities for abuse of discretion, *Am. Cetacean Soc'y*, 768 F.2d at 444, we find none.

According to the Secretary, granting relief would be inequitable because the hospitals waited so long to file suit. The district court rejected this argument, reasoning that the hospitals had sued "just eight months [after *Monmouth*], hardly an inordinate time lag." *In re Medicare Reimbursement Litig.*, No. 03-0090, slip op. at 14 (D.D.C. Mar. 26, 2004). While eight months would not constitute "an inordinate time lag" under the circumstances of this case, the hospitals slept on their rights far longer: like the *Monmouth* plaintiffs, they could have sued after HCFA issued Ruling 97-2. Asked at oral argument to explain why the hospitals had not done so, counsel claimed that Ruling 97-2 failed to give them "fair notice of their right to reopening." Tr. of Oral Arg. at 20. But the *Monmouth* plaintiffs had sufficient notice to sue, and when pressed, counsel admitted that

his clients "could have" done so as well. *Id*. at 22. That said, we see no basis for concluding that the district court abused its discretion by rejecting the Secretary's timeliness argument, for the Secretary has failed to demonstrate that he suffered any prejudice due to the hospitals' unexplained delay. *Cf. Natural Res. Def. Council v. Pena*, 147 F.3d 1012, 1026 (D.C. Cir. 1998) (finding prejudice necessary for delay to warrant denial of injunctive relief).

The Secretary claims that reopening the NPRs "would be a very difficult and uncertain process, as well as being extraordinarily time-consuming to audit and verify." Appellant's Br. at 33 (quoting Decl. of Stephen Phillips). Yet the Secretary explains neither why reopening would be more burdensome now than it would have been five years ago nor why reopening would create more uncertainty now than it would have then. In fact, the hospitals assure us that they, not the Secretary, will "have to shoulder the burden of locating and presenting . . . data from prior years for the fiscal intermediaries" to use in recalculating DSH entitlement "upon reopening." Appellee's Br. at 32. Elaborating at oral argument, hospital counsel explained that under the terms of a ruling issued by the Secretary, in any reopening the "burden [rests] on the hospital to produce the data" needed to recalculate its DSH entitlement, and "the hospital takes nothing if it can't produce the information." Tr. of Oral Arg. at 29. Neither in his brief nor at oral argument did the Secretary challenge either of these assertions. On the record before us, then, we think it obvious that if the delay has increased the risk of lost evidence or the administrative burdens associated with reopening, only the hospitals will suffer. As the district court noted, moreover, even if the delay increased HCFA's administrative burden, the additional "burden [would] not outweigh the public's substantial interest in the Secretary's following the law." *In re Medicare Reimbursement Litig.*, No. 03-0090, slip op. at 15 (D.D.C. Mar. 26, 2004).

The Secretary also invokes "important principles of finality and repose," asserting that they "would be greatly undermined" were we to uphold the district court. Appellant's Br. at 33. The Secretary adds that "a substantial and unanimous body of law protect[s] the integrity of decisions that are closed and final, regardless of whether the rule of decision upon which they are based is invalidated . . . later." *Id*. at 33-34. Yet the Secretary's own regulations provide for reopening when HCFA "notifies an intermediary that [a] determination or decision is inconsistent with the applicable law." 42 C.F.R. § 405.1885(b) (1997). To show that the interest in finality warrants denying mandamus relief, then, the Secretary must explain why this interest became more important between 1997, when Ruling 97-2 triggered the hospitals' right to section 405.1885(b) reopening, and 2002, when the hospitals sued to enforce that right. The Secretary, however, has failed to do so. *See supra* at 9.

In his opening brief, the Secretary takes pains to point out the extraordinary sums at stake in the hundreds of cases now pending in the district court—more than $1 billion, according to the Secretary. Yet as his counsel rightly conceded at oral argument, Congress imposed on the Secretary a clear statutory duty to pay the hospitals these funds. Having to pay a sum one owes can hardly amount to an equitable reason for not requiring payment.

The judgment of the district court is affirmed.

*So ordered.*