ROGUE VALLEY MEDICAL
CENTER, Appellant

v.

Kathleen SEBELIUS, Appellee.

No. 10–5123.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 17, 2010.

Leslie David Alderman, III, Esquire, Alderman, Devorsetz & Hora, PLLC, Washington, DC, for Appellant.

Christine N. Kohl, U.S. Department of Justice, Washington, DC, Ronald C. Machen, Jr., Esquire, U.S., R. Craig Lawrence, U.S. Attorney's Office, Washington, DC, Anthony John Steinmeyer, Assistant Director, U.S. Department of Justice (DOJ) Office of the Attorney General, Washington, DC, for Appellee.

**Before:** SENTELLE, Chief Judge, HENDERSON, Circuit Judge, and RANDOLPH, Senior Circuit Judge.

***JUDGMENT***

PER CURIAM.

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. It is

**ORDERED** that the judgment from which this appeal has been taken be affirmed.

Rogue Valley Medical Center (Rogue Valley) appeals the district court's dismissal of its complaint seeking mandamus relief requiring that Secretary of Health and

Human Services Kathleen Sebelius (Secretary) direct Rogue Valley's Fiscal Intermediary (Intermediary) to reopen its fiscal year 1995 Medicaid report and recalculate the reimbursement amount due.[1] "A court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C.Cir.2010) (internal quotation omitted). Reviewing the district court's dismissal de novo, *id.*, we conclude that, under our decision in *Cookeville Regional Medical Center v. Leavitt*, 531 F.3d 844 (D.C.Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 1524, 173 L.Ed.2d 656 (2009), Rogue Valley has not satisfied the strict mandamus requirements.

Rogue Valley seeks to reopen the Intermediary's decision in order to recover the costs of treating its "expansion population." A Medicaid "expansion population" (or "expansion waiver population") consists of select uninsured or uninsurable individuals who would not otherwise qualify for Medicaid but who nonetheless receive treatment under a state's nonstandard Medicaid plan. *Cookeville*, 531 F.3d at 845. Before 2000, the Secretary's policy was not to include such costs in the "disproportionate share adjustment," which is used to supplement reimbursement for a hospital that serves a high percentage of low-income patients.[2] On January 20, 2000, the Secretary issued a final rule (Expansion Population Rule) which changed the policy to include the expansion population in the disproportionate share adjustment *prospectively* for discharges occurring on or after that date.

In *Cookeville*, two groups of Tennessee hospitals filed separate actions challenging the Secretary's refusal to count the expansion population for cost reports covering periods preceding the policy change. The hospitals there relied on 42 U.S.C. § 1315(a)(2)(A), which directs that the costs of treating the expansion population "shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan." We rejected the hospitals' interpretation that "shall" in section 1315(a)(2)(A) means that expansion waiver patients *must* be treated as eligible for medical assistance. We found instead that, "[p]lausibly, the 'to the extent' language is a grant of discretion to the Secretary to determine which costs or how much of the costs are to be treated as expenditures," thereby granting the Secretary "discretion to limit a hospital's reimbursement for the expansion waiver population, rather than permitting the hospital to seek the disproportionate share hospital adjustment." 531 F.3d at 848. Accordingly, we concluded "it was unclear, prior to the Deficit Reduction Act, whether the Secretary had discretion to exclude the expansion waiver population from the disproportionate share hospital

---

1. "A Medicare provider submits a yearly cost report to a fiscal intermediary (typically a private insurance company acting on the Secretary's behalf), which determines the reimbursement amount owed the hospital for the cost reporting year." *St. Luke's Hosp. v. Sebelius*, 611 F.3d 900, 903 n. 6 (D.C.Cir.2010).

2. The disproportionate share adjustment is based on a percentage that consists of the "sum of two fractions," one of which, the "Medicaid fraction," "is derived by dividing 'the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [of the Social Security Act]' by the 'total number of a hospital's patient days for such period.'" *Cookeville*, 531 F.3d at 846 (quoting 42 U.S.C. § 1395ww(d)(5)(F)(vi)) (alteration in original). Before 2000, the Secretary did not include expansion patients in the Medicaid fraction. *Id.*

adjustment." *Id.* at 849. Given the lack of clarity regarding the extent of the Secretary's discretion, we can only conclude that Rogue Valley lacks the " 'clear and indisputable' right to relief" and the Secretary the "clear and compelling duty" to act that are necessary to support mandamus relief. *In re Cheney,* 406 F.3d 723, 729 (D.C.Cir.2005) (en banc).

Rogue Valley attempts to distinguish this case from *Cookeville* on the ground that the *Cookeville* hospitals sought review by the Provider Reimbursement Review Board pursuant to 42 U.S.C. § 1395oo while Rogue Valley seeks relief through reopening of the Intermediary's decision pursuant to 42 C.F.R. § 405.1885(b) (1999). According to Rogue Valley, the Expansion Population Rule (or its precursor, Program Memorandum Intermediaries, Trans. No. A–99–62 (Dec. 1999)) constituted a "notice of inconsistency" requiring such reopening under section 405.1885(b), which provides that an intermediary decision "*shall* be reopened and revised by the intermediary" if within three years the Health Care Financing Administration "notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions" (emphasis added). This argument fails under *Cookeville,* which makes clear that the Intermediary's decision was not inconsistent with the then applicable law—either with the ambiguous language of section 1315(a)(2)(A) or with the Secretary's interpretation thereof as granting him discretion whether to exclude the expansion population or allow reimbursement.[3]

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

---

3. Rogue Valley also challenges the Deficit Reduction Act as "retroactive"—a claim we flatly rejected in *Cookeville.* 531 F.3d at 849 ("[T]here is no problem of retroactivity. The Deficit Reduction Act did not retroactively alter settled law; it simply clarified an ambiguity in the existing legislation.").