**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMPIRE HEALTH FOUNDATION, for
Valley Hospital Medical Center,
*Plaintiff-Appellee/*
*Cross-Appellant*,

v.

ALEX M. AZAR II, Secretary of the
United States Department of Health
and Human Services,
*Defendant-Appellant/*
*Cross-Appellee.*

Nos. 18-35845
18-35872

D.C. No.
2:16-cv-00209-
RMP

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted February 6, 2020
Seattle, Washington

Filed May 5, 2020

Before:  MILAN D. SMITH, JR. and N. RANDY SMITH, Circuit Judges, and JOHN R. TUNHEIM,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

**SUMMARY**[**]

---

**Medicare / Rulemaking**

The panel affirmed, on different grounds, the district court's order granting partial summary judgment for Empire Health Foundation and vacating the 2005 Rule promulgated by the Secretary of the Health and Human Services ("HHS"), interpreting a Medicare regulation.

The 2005 Rule removed the word "covered" from 42 C.F.R. § 412.106(b)(2)(i), effectively amending HHS's interpretation of "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi), a subsection of the Medicare Act, 42 U.S.C. §1395 *et. seq*.  The Rule concerns HHS's annual calculation of the disproportionate share hospital adjustment (DSH Adjustment), which increases a hospital's annual Medicare inpatient services reimbursement based on the approximate number of low-income patients the hospital serves.

---

[*] The Honorable John R. Tunheim, United States Chief District Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Empire challenged the 2005 Rule as part of its appeal of HHS's calculation of its 2008 reimbursement. The district court held that the 2005 Rule was substantively valid, but it should be vacated because the rulemaking process failed to meet the Administrative Procedure Act ("APA")'s procedural requirements.

The panel held that the 2005 Rule's rulemaking process, while not perfect, satisfied the APA's notice-and-comment requirements. The panel reversed the district court's contrary conclusion. The panel also held, however, that the 2005 Rule was substantively invalid, and must be vacated, because it directly conflicted with the court's interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(vi) in *Legacy Emanuel Hospital and Health Center v. Shalala*, 97 F.3d 1261, 1265-66 (9th Cir. 1996). Because *Legacy Emmanuel* interpreted the meaning of "entitled to [Medicare]" in 42 U.S.C § 1395ww(d)(5)(F)(vi) to be unambiguous, the 2005 Rule's conflicting construction cannot stand. Thus, the panel affirmed, on different grounds, the district court's summary judgment in favor of Empire.

The panel affirmed the district court's order vacating the 2005 Rule. The panel reinstated the prior version of 42 C.F.R. § 412.106(b)(2)(i), which embraced only "covered" patient days. The panel remanded to the district court with instructions to further remand to the Provider Reimbursement Review Board to decide the remaining issues in the case.

**COUNSEL**

Stephanie R. Marcus (argued) and Mark B. Stern, Appellate Staff; William D. Hyslop, United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant/Cross-Appellee.

Daniel John Hettich (argued), King & Spalding LLP, Washington, D.C.; Teresa A. Sherman, Paukert & Troppmann PLLC, Spokane, Washington; for Plaintiff-Appellee/Cross-Appellant.

**OPINION**

M. SMITH, Circuit Judge:

This appeal, made pursuant to the Medicare Act's expedited judicial review provision, 42 U.S.C. § 1395*oo*(f)(1), requires us to determine whether a rule promulgated by the Secretary of the Department of Health and Human Services (HHS) (the 2005 Rule[1]) is procedurally and substantively valid pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*[2] The 2005

---

[1] At issue in this case is one portion of a final rule that amended a wide range of Medicare regulations. 69 Fed. Reg. 48916, 49098–99 (Aug. 11, 2004). For the purposes of this opinion, "2005 Rule" refers only to the portion of the final rule, discussed in greater detail below, which removed the word "covered" from 42 C.F.R. § 412.106(b)(2)(i).

[2] The Medicare Act's expedited judicial review provision incorporates the judicial review provisions of the APA. *See* 42 U.S.C. § 1395*oo*(f); *see also Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 652 (9th Cir. 2011) ("In a civil action under

Rule removed the word "covered" from 42 C.F.R. § 412.106(b)(2)(i), effectively amending HHS's interpretation of "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi), a subsection of the Medicare Act, 42 U.S.C. § 1395 *et seq.*[3]   At stake is HHS's annual calculation of the disproportionate share hospital adjustment (DSH Adjustment), which increases a hospital's annual Medicare inpatient services reimbursement based on the approximate number of low-income patients the hospital serves.  *See Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013).

Plaintiff Empire Health Foundation (Empire) challenged the 2005 Rule as part of its appeal of HHS's calculation of its 2008 reimbursement.  The district court granted partial summary judgment for Empire, ruling that, while the 2005 Rule was substantively valid, it should be vacated because the rulemaking process leading to its adoption failed to meet the APA's procedural requirements.

We affirm the district court's summary judgment in favor of Empire, and its order vacating the 2005 Rule, but on different grounds.  *See McSherry v. City of Long Beach*,

---

§ 1395*oo*(f)(1), the validity of the fiscal intermediary's action is subject to judicial review using the familiar standards of the Administrative Procedure Act ('APA')—i.e., whether the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (citing 5 U.S.C. § 706(2)(A))).

[3] 42 U.S.C. § 1395ww(d)(5)(F)(vi) refers to "benefits under part A" instead of "Medicare," "supplementary social security income benefits (excluding any State supplementation) under subchapter XVI of this chapter," instead of "SSI benefits," and "medical assistance under a State plan approved under subchapter XIX," instead of "Medicaid."  Herein, when quoting the statute, we use "[Medicare]," "[SSI benefits]," and "[Medicaid]" for simplicity.

584 F.3d 1129, 1135 (9th Cir.2009) ("We may affirm on the basis of any ground supported by the record."). We hold that the 2005 Rule's rulemaking process, while not perfect, satisfied the APA's notice-and-comment requirements. However, we also hold that the 2005 Rule is substantively invalid, and must be vacated, because it directly conflicts with our interpretation of 42 U.S.C. § 1395ww(d)(5)(F)(vi) in *Legacy Emanuel Hospital and Health Center v. Shalala*, 97 F.3d 1261, 1265–66 (9th Cir. 1996). Because *Legacy Emanuel* interpreted the meaning of "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi) to be unambiguous, the 2005 Rule's conflicting construction cannot stand. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs. (Brand X)*, 545 U.S. 967, 982–83 (2005).

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Relevant Statutory and Regulatory Background

As part of the Medicare program, a hospital that "serves a significantly disproportionate number of low-income patients," 42 U.S.C. § 1395ww(d)(5)(F)(i)(I), receives a DSH Adjustment, which approximately reimburses it for higher costs associated with providing that service, *Catholic Health*, 718 F.3d at 916. HHS administers DSH Adjustments through the Centers for Medicare and Medicaid Services (CMS).[4]

Qualification for the DSH Adjustment and the amount of any DSH Adjustment are determined by a hospital's "disproportionate patient percentage" (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is calculated by adding the

---

[4] For simplicity, we include CMS in our references to "HHS" herein.

two fractions set forth in § 1395ww(d)(5)(F)(vi),[5] commonly referred to as the "Medicare fraction" and the "Medicaid fraction." *See, e.g.*, *Catholic Health*, 718 F.3d at 916. The two fractions are intended to capture a hospital's number of patient days attributable two different groups of low-income patients. *Id.* at 916–17. SSI entitlement is used as the low-income proxy for the Medicare population, and Medicaid eligibility is used as the low-income proxy for the

---

[5] In pertinent part, 42 U.S.C. § 1395ww(d)(5)(F)(vi) provides:

**(vi)** In this subparagraph, the term "disproportionate patient percentage" means, with respect to a cost reporting period of a hospital, the sum of—

**(I)** the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter, and

**(II)** the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

non-Medicare population. *Id.*; *Legacy Emanuel*, 97 F.3d at 1265–66.

The following chart illustrates the two fractions:

|  | **Medicare fraction** | **Medicaid fraction** |
|---|---|---|
| **Numerator** | Patient days for patients entitled to Medicare and entitled to SSI Benefits | Patient days for patients eligible for Medicaid but not entitled to Medicare |
| **Denominator** | Patient days for patients entitled to Medicare | Total number of patient days |

*See Catholic Health*, 718 F.3d at 917 (providing the chart as a visual representation of the two fractions).

Empire's challenge concerns the 2005 Rule's interpretation of the statutory phrase "entitled to [Medicare]" in its implementing regulation, 42 C.F.R. § 412.106(b)(2)(i),[6] and that interpretation's effect on the

---

[6] In pertinent part, 42 C.F.R. § 412.106(b), as amended by the 2005 Rule, provides:

> (b) Determination of a hospital's disproportionate patient percentage—
>
>> (1) General rule. A hospital's disproportionate patient percentage is determined by adding the

treatment of "dual eligible exhausted coverage patient days."**[7]** These are patient days attributable to patients eligible for both Medicare and Medicaid and whose hospital stays have exceeded the 90-day limit applicable to Medicare coverage (after which Medicare ceases to cover the patient's

results of two computations and expressing that sum as a percentage.

(2) First computation: Federal fiscal year. For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS—

(i) Determines the number of patient days that—

(A) Are associated with discharges occurring during each month; and

(B) Are furnished to patients who during that month were entitled to both Medicare Part A (including Medicare Advantage (Part C)) and SSI, excluding those patients who received only State supplementation; **. . . .**

---

**[7]** As part of its argument that the 2005 Rule's rulemaking process failed to meet the APA's procedural requirements, Empire's briefing alludes to the impact of the 2005 Rule on "Medicare Secondary Payer" days, which are patient days for which Medicare is not the primary payer pursuant to 42 U.S.C. § 1395y(b)(2)(A). Empire offered little explanation as to what the 2005 Rule's impact on Medicare Secondary Payer days was, and did not refer to Medicare Secondary Payer days in its reply brief. Because Empire insufficiently explained this argument in its briefing, we rule that it was waived. *See Ghahremani v. Gonzales*, 498 F.3d 993, 997–98 (9th Cir. 2007); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992). In any case, it is immaterial to our holding today, which invalidates the 2005 Rule on substantive grounds.

inpatient hospital services costs).[8]    42 U.S.C. § 1395d; 42 C.F.R. § 409.61(a)(1).

Pursuant to the version of 42 C.F.R. § 412.106(b)(2)(i) in place before the 2005 Rule was promulgated, HHS included only "covered" patient days in the Medicare fraction when calculating a hospital's DSH Adjustment. 42 C.F.R. § 412.106(b)(2)(i) (2003); 69 Fed. Reg. at 49098. This had the effect of excluding dual eligible exhausted coverage patient days from the numerator and denominator of the Medicare fraction. Meanwhile, HHS also excluded dual eligible exhausted coverage patient days from the Medicaid fraction. *Edgewater Med. Ctr. v. Blue Cross & Blue Shield Ass'n*, HCFA Adm'r Dec., 2000 WL 1146601, at *4–5 (June 19, 2000).[9] Because HHS did not include dual eligible exhausted coverage patient days in either the Medicare fraction or the Medicaid fraction before the 2005 Rule, HHS did not count those days at all for the purpose of calculating a given hospital's DSH Adjustment. *See Catholic Health*, 718 F.3d at 921, 921 n.5.

In contrast, in the 2005 Rule, HHS removed the word "covered" from 42 C.F.R. § 412.106(b)(2)(i). As a result, HHS now includes dual eligible exhausted coverage patient days in the numerator and denominator of the Medicare

---

[8] Medicare will pay for a limited number of days for each hospitalization. If a patient's stay exceeds that number, coverage is exhausted, and Medicare will not pay for the additional days. 42 U.S.C. § 1395d.

[9] The Health Care Financing Administration is the predecessor of CMS. *See Catholic Health*, 718 F.3d at 918 n.2.

fraction when calculating a given hospital's DSH Adjustment.[10]

## A.  The 2005 Rule's Rulemaking Process

To arrive at the interpretation reflected in the 2005 Rule, HHS took a circuitous route.  Initially, HHS proposed in 2003 to include dual eligible exhausted coverage patient days in the Medicaid fraction commencing with Fiscal Year (FY) 2004 (the 2003 Notice).  68 Fed. Reg. 27154, 27207–208 (May 19, 2003).  In the 2003 Notice, HHS misstated its then-applicable rule with respect to dual eligible exhausted coverage patient days, asserting that HHS counted them in the Medicare fraction.  Several comments responding to the 2003 Notice noted the misstatement and pointed out that the then-applicable regulation did *not* include dual eligible exhausted coverage patient days in the Medicare fraction.  In its FY 2004 final rule, HHS deferred deciding whether to promulgate the proposed change, noting that it was still reviewing comments on dual eligible exhausted coverage patient days and would respond in a different document. 68 Fed. Reg. 45346, 45421 (Aug. 1, 2003).

In 2004, as part of its rulemaking proposal for the 2005 Rule, the agency explained that it would make sure to address any comments received in response to the 2003 Notice.  69 Fed. Reg. 28196, 28286 (May 18, 2004).  The new comment period ran until July 12, 2004.  Days before

---

[10] Empire contends that the 2005 Rule "serves to systematically reduce payments hospitals receive for treating" low-income patients. Empire's Brief at 5.  The record, however, is unclear as to whether the 2005 Rule's interpretation has increased or decreased hospital reimbursements in general.  It appears that its effect on hospitals is highly fact-specific, depending on a given hospital's patient demographics. *See* 69 Fed. Reg. at 49098–99.

the comment period for the 2005 Rule closed, HHS posted a webpage acknowledging the 2003 Notice's misstatement of the then-applicable rule.[11]  HHS stated that "[o]ur policy has been that only covered patient days are included in the Medicare fraction."   A few commenters acknowledged HHS's correction.  Without acknowledging HHS's initial mistake, however, many other commenters voiced support for the erroneously stated status quo.

In the August 11, 2004 Federal Register entry describing the final version of the 2005 Rule, HHS noted that:

> We received numerous comments that commenters were disturbed and confused by our recent Web site posting regarding our policy on dual-eligible patient days.  The commenters believe that this posting was a modification or change in our current policy to include patient days of dual-eligible Medicare beneficiaries whose Medicare Part A coverage has expired in the Medicaid fraction of the DSH calculation.  In addition, the commenters believed that the information in this notice appeared with no formal notification by CMS and without the opportunity for providers to comment.

69 Fed. Reg. at 49098.  In response, HHS explained that the webpage posting "was not a change in our current policy,"

---

[11] We note that there appears to be some dispute in the record over whether the webpage was published three or five days before the close of the comment period.  For the purposes of our analysis, this difference of two days is immaterial.

but a "correction of an inadvertent misstatement" made in the 2003 Notice.  *Id*.

The 2005 Rule included dual eligible exhausted coverage patient days in the Medicare fraction.  69 Fed. Reg. at 49098–99.  In effect, the new rule enacted what HHS had mistakenly stated was the status quo in the 2003 Notice.  Pursuant to the 2005 Rule, HHS now counts dual eligible exhausted coverage patient days as Medicare days even if Medicare did not pay for them.  69 Fed. Reg. at 49099 ("[W]e are adopting a policy to include the days associated with dual-eligible beneficiaries in the Medicare fraction, *whether or not the beneficiary has exhausted Medicare Part A hospital coverage.*" (emphasis added)).

## II.  The Proceedings in this Case

Empire acquired the outstanding Medicare reimbursement owed to Valley Hospital Medical Center for periods prior to October 1, 2008, including the 2008 fiscal year at issue here.[12]  Dissatisfied with its total reimbursement amount for FY 2008, Empire timely appealed HHS's calculation of Empire's FY 2008 reimbursement and requested a hearing before the Provider Reimbursement Review Board (PRRB).  The PRRB granted Empire's request for expedited judicial review pursuant to 42 U.S.C. § 1395*oo*(f)(1), allowing Empire to challenge the

---

[12] Due to HHS's delay in amending the language of its regulations after the promulgation of the 2005 Rule, FY 2008 was the first year in which the 2005 Rule was implemented, removing the word "covered" from 42 C.F.R. § 412.106(b)(2)(i).  *See Allina Health Services v. Sebelius*, 746 F.3d 1102, 1106 n.3 (D.C. Cir. 2014); 72 Fed. Reg. 47130, 47384 (Aug. 22, 2007) (describing "technical correction" implementing changes to 42 C.F.R. § 412.106(b)(2)(i)).

2005 Rule in the district court.[13]  Empire timely filed this action in the district court, challenging the 2005 Rule's interpretation of "entitled to [Medicare]" as both procedurally and substantively invalid pursuant to the APA.[14]

The parties cross-moved for summary judgment.  The district court granted Empire's summary judgment motion in part, denied HHS's summary judgment motion, and vacated the 2005 Rule, ruling that the 2005 Rule's rulemaking process violated the APA because HHS did not give more time for comment after correcting its misstatement in the 2003 Notice.  However, the district court sided with HHS on the substantive propriety of HHS's interpretation of "entitled."  First, it held that our ruling in *Legacy Emanuel*, 97 F.3d at 1265, did not foreclose HHS's interpretation of the statute pursuant to *Brand X*.  It next held at *Chevron* step one, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), that Congress's intent was unclear from the plain language and statutory purpose of 42 U.S.C. §1395ww(d)(5)(F)(vi).  Finally, it held at *Chevron* step two, *see* 467 U.S. at 843, that HHS's interpretation of the statute was a permissible construction of the statute.  Empire and HHS each timely appealed.

---

[13] Expedited judicial review is triggered when the PRRB, on its own or at the request of a provider, determines it does not have the authority to resolve a provider's challenge.  42 U.S.C. § 1395*oo*(f)(1).

[14] Empire also argued that, if HHS's 2005 Rule were upheld, HHS should broaden its interpretation of "entitled to [SSI benefits]" in the Medicare fraction to include patient days that reflect SSI eligibility, not just payment.  Because we vacate the 2005 Rule, we do not address this argument.

**JURISDICTION AND STANDARD OF REVIEW**

The district court had jurisdiction over this appeal pursuant to 42 U.S.C. § 1395*oo*(f)(1), the Medicare Act's expedited judicial review provision, and 28 U.S.C. § 1331, as a dispute arising under federal law.  We have jurisdiction over these cross-appeals pursuant to 28 U.S.C. § 1291.  We review de novo a district court's decision on cross motions for summary judgment.  *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011).

**ANALYSIS**

**I.   The Procedural Validity of the 2005 Rule**

Empire asserts that the 2005 Rule violated the APA's procedural requirements because HHS did not provide the public with an additional comment period after admitting that it misrepresented the status quo in the 2003 Notice.  We disagree.

The APA requires an agency to comply with notice-and-comment procedures when the agency amends its regulations.  5 U.S.C. § 553.[15]  The agency must publish a notice of proposed rulemaking, which shall include, in relevant part, "either the terms or substance of the proposed rule or a description of the subjects and issues involved."  *Id.* § 553(b)(3).  After notice, interested parties must have the

---

[15] The Medicare Act has its own notice-and-comment procedure. 42 U.S.C. § 1395hh(b).  Because of the similarity of the two procedures, we will use the more robust APA caselaw in order to analyze this claim of procedural error.  *See Monmouth Med. Center v. Thompson*, 257 F.3d 807, 814 (D.C. Cir. 2001).  Moreover, the parties briefed this issue pursuant to the APA.  *See also Stringfellow Mem. Hosp. v. Azar*, 317 F. Supp. 3d 168, 184 n.6 (D.D.C. 2018).

opportunity to comment on the proposal, "participat[ing] in the rule making through submission of written data, views, or arguments." *Id.* § 553(c).

We will set aside an agency action that we find to be "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). We have also concluded that "[a] decision made without adequate notice and comment is arbitrary or an abuse of discretion." *Nat. Res. Def. Council v. EPA* (*NRDC II*), 279 F.3d 1180, 1186 (9th Cir. 2002) (citing 5 U.S.C. § 706(2)(A)). Pursuant to the APA, whether notice is adequate is "whether interested parties reasonably could have anticipated the final rulemaking" from the proposed rule. *Id.* at 1187 (quoting *Nat. Res. Def. Council v. EPA* (*NRDC I*), 863 F.2d 1420, 1429 (9th Cir. 1988)). The key inquiry is whether the changes in the final rule are a "logical outgrowth of the notice and comments received." *Rybachek v. United States EPA*, 904 F.2d 1276, 1288 (9th Cir. 1990). The Medicare statute echoes this standard, providing that if a final regulation "is not a logical outgrowth of a previously published notice of proposed rulemaking," the final regulation "shall be treated as a proposed regulation" requiring further public comment. 42 U.S.C. § 1395hh(a)(4).

Other considerations to determine the adequacy of notice include "whether a new round of notice and comment would provide the first opportunity for interested parties to offer comments that could persuade the agency to modify its rule," *NRDC II*, 279 F.3d at 1186 (quoting *Am. Water Works Ass'n v. EPA*, 40 F.3d 1266, 1274 (D.C. Cir. 1994), and whether "the notice 'fairly apprise[s] interested persons of the subjects and issues before the [a]gency,'" *Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 975 (9th Cir. 2005) (quoting *NRDC II*, 279 F.2d at 1186.

Here, HHS undoubtedly misstated the then-applicable rule in the 2003 Notice.  Nevertheless, the 2003 Notice did describe the content of the 2005 Rule, even if it incorrectly characterized it as the then-applicable rule.  68 Fed. Reg. 27154, 27207.  HHS corrected its misstatement of the then-applicable rule before the end of the second comment period.  Moreover, many sophisticated commenters, including several large hospital associations, supported placing dual eligible exhausted coverage patient days in the Medicare fraction, as the 2005 Rule finally did.  The rulemaking process was certainly not perfect, and some commenters expressed confusion with HHS's correction notice.  69 Fed. Reg. 48916, 49098.  However, the 2005 Rule was a logical outgrowth of the proposed rule change, and HHS's 2003 Notice provided adequate notice to commenters of what the agency was considering.  As another district court observed in upholding the 2005 Rule's notice-and-comment process: "Numerous commenters during both the initial and the second comment periods wrote in support of the misstated status quo—that is, the policy that was ultimately adopted—to 'urge that CMS not change the rules for counting dual-eligible days.'"  *Stringfellow*, 317 F. Supp. 3d at 187 (quoting record).

We conclude that the procedural error alleged by Empire here is similar to the one the Supreme Court addressed in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174–75 (2007).  There, the Court rejected a procedural challenge to a final rule that was the opposite of what was contained in a rulemaking proposal.  *Id.*  The final rule exempted certain domestic workers from the Fair Labor Standards Act (FLSA), when the proposal had contemplated including them within the FLSA's ambit.  *Id.*  Nevertheless, the court held that the final rule was "reasonably foreseeable" and the proposal had provided fair notice to commenters.  *Id.* at 175.

The Court observed that commenters could reasonably foresee that "after . . . consideration [of the proposal] the Department might choose to adopt the proposal or to withdraw it." *Id*. Commenters on the 2005 Rule were similarly apprised of a binary choice—under the new rule, dual eligible exhausted coverage patient days would be included in either the Medicare or the Medicaid fraction. In the end, they were included in the Medicare fraction.

*Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014), on which Empire relies, is inapposite. *Allina* involved a challenge to a different portion of the final rule that also contained the 2005 Rule. *Id.* at 1106–07. In the applicable notice of proposed rulemaking, the agency proposed to "clarify" an existing practice and stated that it did not expect the clarification to have a major financial impact. *Id.* at 1106. But the final rule in *Allina* was an entirely new policy with enormous financial consequences. *Id.* at 1107. The D.C. Circuit held that the rule was not a "logical outgrowth" of its proposal, because it could not have been anticipated by the parties based on the purported clarification described in the notice of proposed rulemaking. *Id.* at 1108–09 (asking whether "even a good lawyer" could "anticipate . . . such a volte-face with enormous financial implications would follow [HHS's] proposed rule."); *see also Stringfellow*, 317 F. Supp. 3d at 188–89 (distinguishing *Allina* while upholding the 2005 Rule's notice-and-comment procedure). Here, however, the 2005 Rule was a "logical outgrowth" of the 2003 Notice because, as we have explained, the parties could anticipate that HHS intended to change the way it treated dual eligible exhausted coverage patient days in the DSH Adjustment. The rulemaking procedure at issue here did not involve the unexpected "volte-face" that the D.C. Circuit confronted in *Allina*. 746 F.3d at 1109.

Because we conclude that the 2005 Rule was a logical outgrowth of the notice and the comments received, we reverse the district court's contrary conclusion. Nevertheless, we ultimately affirm the district court's summary judgment in favor of Empire and order vacating the 2005 Rule, because we hold that the 2005 Rule is substantively invalid.

## II. The Substantive Validity of the 2005 Rule

Having determined that the 2005 Rule met the APA's procedural requirements, we next consider its substantive validity pursuant to the APA. Empire argues that our decision in *Legacy Emanuel* forecloses HHS's interpretation of "entitled to [Medicare]" in the 2005 Rule. HHS, citing Sixth and D.C. Circuit decisions, maintains that we are not bound by *Legacy Emanuel*'s analysis of "entitled to," because there, according to HHS's argument, we decided only the meaning of the phrase "eligible for medical assistance under . . . [Medicaid]." According to HHS, our analysis of the phrase "entitled to [Medicare]" is nothing more than "non-binding dicta." Government's Reply Brief at 28. We agree with Empire that *Legacy Emanuel* is directly at odds with the 2005 Rule, and thus conclude that the rule is substantively invalid.

In a substantive APA challenge to a notice-and-comment rule, we apply the *Chevron* two-step framework. *See United States v. Mead Corp.*, 533 U.S. 218, 230–31 (2001). At *Chevron* step one, we ask whether Congress "has directly spoken to the precise question at issue" in the statutory text. *Chevron*, 467 U.S. at 842. We employ "traditional tools of statutory construction" to determine whether "Congress had an intention on the precise question at issue[.]" *Id.* at 843 n. 9. If the statute is silent or ambiguous, however, we proceed to *Chevron* step two and ask "whether the agency's answer

is based on a permissible construction of the statute." *Id.* at 843.

Judicial precedent affects how we apply the *Chevron* framework. "[A] judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Brand X*, 545 U.S. at 982–83. This occurs "if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982. In other words, if the prior court decision was decided at *Chevron* step one, there is no need to proceed to *Chevron* step two.

Our ruling in *Legacy Emanuel* was clearly a *Chevron* step one decision. 97 F.3d at 1265 ("We believe the language of the Medicare reimbursement provision is clear[.]"). In *Legacy Emanuel*, we considered the meaning of the words "entitled" and "eligible" in tandem. We interpreted the word "entitled" to mean that a patient has an "absolute right . . . to payment." *Id.* In contrast, we interpreted the word "eligible" to mean that a patient simply meets the Medicaid statutory criteria: "if Congress had wanted to limit the Medicaid proxy to days for which Medicaid actually paid, Congress could have used 'entitled' or expressly specified that it was to include only those days actually paid for by Medicaid." *Id.* We held that Congress used a "broader word" than entitled in the Medicaid fraction to fulfill its intent of compensating hospitals for treating low-income patients. *Id.* And we noted that the use of "entitled" in the Medicare fraction did not frustrate that purpose, because the low-income proxy in the Medicare fraction is ultimately determined by entitlement to SSI, not Medicare. *Id.* at 1265–66. The 2005 Rule's interpretation of "entitled,"

in contrast, resembles our understanding of the term "eligible" in *Legacy Emanuel* by embracing even those patient days for which Medicare coverage is exhausted (i.e., for which there is no absolute right to payment).  69 Fed. Reg. at 49099.  Thus, the 2005 Rule mistakenly treats as ambiguous statutory language that we deemed clear, and rewrites that language in contravention of our interpretation.

Rejecting Empire's challenge to the 2005 Rule's substantive validity, the district court determined that *Legacy Emanuel* does not control the meaning of the statutory text at issue here and thus proceeded to *Chevron* step two.  HHS adopts that position here and argues that that *Legacy Emanuel* did not actually decide the meaning of the term "entitled" in the Medicare fraction.  We reject this reading of *Legacy Emanuel*.  *Legacy Emanuel*'s analysis of "eligible for [Medicaid]" is inextricable from its analysis of "entitled to [Medicare]."  Consequently, we are bound by *Legacy Emanuel*'s interpretation of "entitled to [Medicare]" unless and until change comes from our court sitting en banc or the Supreme Court.  *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).  Pursuant to *Brand X*, *Legacy Emanuel*'s unambiguous interpretation of "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi) requires us to invalidate the 2005 Rule, which adopts a conflicting interpretation of the statute.

We recognize, as HHS argues on appeal, that the Sixth and D.C. Circuits have affirmed the 2005 Rule's interpretation of the phrase "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi) at *Chevron* step two.  *See Catholic Health*, 718 F.3d at 920 (affirming 2005 Rule at *Chevron* step two); *Metro. Hosp. v. HHS*, 712 F.3d 248, 270 (6th Cir. 2013) (same).  Those decisions, however, do not control our analysis here because neither court dealt with

binding circuit precedent holding that the statutory language was unambiguous, as *Legacy Emanuel* did.

For example, in *Catholic Health*, the D.C. Circuit relied on circuit precedent determining that the statutory language in question was ambiguous.     718 F.3d at 920 (citing *Northeast Hosp. v. Sebelius*, 657 F.3d 1, at 13 (D.C. Cir. 2011).[16]   So *Brand X* could not have warranted a different result in *Catholic Health*.

The Sixth Circuit's binding precedent construing 42 U.S.C. § 1395ww(d)(5)(F)(vi) also did not trigger *Brand X*'s "stare decisis effect to a prior judicial construction" of a statute.  *Metro. Hosp.*, 712 F.3d at 256.   In *Metropolitan Hospital*, the Sixth Circuit held that its precedent construing "eligible for [Medicaid]" in the Medicaid fraction, *Jewish Hospital, Inc. v. Secretary of Health & Human Services*, 19 F.3d 270 (6th Cir. 1994), did not foreclose the 2005 Rule's interpretation of "entitled to [Medicare]" in the Medicare fraction.  712 F.3d at 257–58.  The Sixth Circuit held that *Brand X* did not apply because *Jewish Hospital* was not decided at *Chevron* step one.  *Metro. Hosp.*, 712 F.3d at 256.   Nevertheless, the court also noted that, even if *Jewish Hospital* were decided at *Chevron* step one, the decision did not precisely decide the statutory meaning of "entitled to [Medicare]," and its discussion of that statutory phrase was secondary to other arguments supporting its holding.   *Id.* at 256–57 (describing *Jewish Hospital*'s

---

[16] We note that then-Judge Kavanaugh's concurring opinion in *Northeast Hospital* agreed with the interpretation of "entitled to [Medicare]" we announced in *Legacy Emanuel*.  *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 20 (D.C. Cir. 2011).

contrast of "entitled" and "eligible" as a "'back-up' analysis").

HHS argues that the Sixth Circuit's reading of *Jewish Hospital*, as set forth in *Metropolitan Hospital*, should somehow control our analysis here because we cited *Jewish Hospital* as part of our statutory interpretation in *Legacy Emanuel*.  But *Legacy Emanuel*'s holding, construing the unambiguous language of 42 U.S.C. § 1395ww(d)(5)(F)(vi), is fundamentally different than *Jewish Hospital*'s, which held that the statute was ambiguous and deferred to the agency's permissible interpretation.  Moreover, *Jewish Hospital*'s analysis of "entitled to [Medicare]" is comparatively shorter than our analysis in *Legacy Emanuel* and was just one of several analyses informing court's decision interpreting "eligible for [Medicaid]."  *Compare Jewish Hospital*, 19 F.3d at 274–76 *with Legacy Emanuel*, 97 F.3d at 1265–66.  Even the Sixth Circuit recognized that our interpretation of "entitled to [Medicare]" in *Legacy Emanuel* played a central role in our analysis.  *Metro. Hosp.*, 712 F.3d at 259 (noting that *Legacy Emanuel* "bas[ed] its conclusion" on the distinction between "eligible to [Medicaid]" and "entitled to [Medicare]").  Because we have already construed the unambiguous meaning of "entitled to [Medicare]" in 42 U.S.C. § 1395ww(d)(5)(F)(vi), we hold that the 2005 Rule's contrary interpretation of that phrase is substantively invalid pursuant to the APA.  Thus, we affirm, on different grounds, the district court's summary judgment in favor of Empire.

## III.   Vacatur of 2005 Rule

Having affirmed, on different grounds, the district court's summary judgment in favor of Empire, we also affirm its order vacating the 2005 Rule.  *See Nat. Res. Def. Council v. EPA* (*NRDC III*), 526 F.3d 591, 608 (9th Cir.

2008) (vacating rule held to be unlawful under *Chevron* analysis). We have observed that "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Univ. of Cal. v. U.S. Dep't Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018) (quoting *Nat'l Mining Ass'n v. U.S. Army Corps. of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998)). Accordingly, we reinstate the prior version of 42 C.F.R. § 412.106(b)(2)(i), which embraced only "covered" patient days, *see Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force.").

## CONCLUSION

While HHS's notice-and-comment procedure for the 2005 Rule was not without flaws, it met the APA's requirements. However, the 2005 Rule violated the unambiguous text of 42 U.S.C. § 1395ww(d)(5)(F)(vi) and our court's ruling in *Legacy Emanuel* by removing the word "covered" from 42 C.F.R. § 412.106(b)(2)(i). As a result, we **AFFIRM**, on different grounds, the district court's order granting partial summary judgment for Empire and vacating the 2005 Rule. We **REMAND** to the district court with instructions to further remand to the PRRB to decide the remaining issue in this case.[17]

**AFFIRMED AND REMANDED.**

---

[17] Both parties agreed to, and the district court ordered, a remand to the PRRB to decide whether, in light of *Allina*, 746 F.3d at 1102, Medicare Part C days should have been included in the Medicare fraction for the Empire's 2008 DSH calculation.